United States District Court
Southern District of Texas
**ENTERED**
November 03, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD SCOTT SHAFER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-167 |
| | § | |
| LORIE  DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Richard Scott Shafer, a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) excessive force claims against **Sergeant Nestor S. Ochoa and Lieutenant Javier Muro** in their individual capacities; and (2) excessive claim against **Warden Evelyn Castro** in her official capacity for injunctive relief only.  Accordingly, it is respectfully recommended that these claims be **RETAINED**. The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned further recommends that: (1) **TDCJ Director Lorie Davis, TDCJ Director of Chaplaincy Michael Rutledge, Head Chaplain Joseph Wright, Captain Skinner C. Sturgis, Captain Christi L. Garcia, Lieutenant**

**Dorian B. Garza, Sergeant Rodolfo A. Garcia, and Sergeant Andrew H. Nino** be **DISMISSED without prejudice** from this action; (2) Plaintiff's claims for money damages against all individuals Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; and (3) Plaintiff's claims against the remaining defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). Plaintiff's claims and allegations in this action arise in connection with his current assignment to the McConnell Unit in Beeville, Texas.

In this case, Plaintiff sues the following McConnell Unit and TDCJ officials: (1) TDCJ Director Davis; (2) Former Head Warden Jeffrey Richardson; (3) Senior Warden Evelyn Castro; (4) TDCJ Director of Chaplaincy Rutledge; (5) Head Chaplain Wright, Head Chaplain; (6) Major John R. Delapp, Jr.; (7) Capt. Sturgis; (8) Capt. Garcia; (9) Lt. Garza; (10) Lt. Muro; (11) Sgt. Garcia; (12) Sgt. Nino; (13) Sgt. Ochoa; (14) Unit Grievance Investigator (UGI) Jessica Garcia; and (15) UGI A. Johnson.  Plaintiff sues each defendant in his or her individual and official capacity.  Plaintiff seeks declaratory, injunctive, and monetary relief.

A *Spears*[1] hearing was conducted on August 20, 2020, where Plaintiff was given an opportunity to explain his claims. In a separate Order, the undersigned concluded that Plaintiff has impermissibly attempted to join unrelated claims in one action. The undersigned detailed Plaintiff's claims as falling under three distinct groups of claims. Plaintiff's claims in Group One generally arise from Plaintiff's allegations in which he refused to be housed in a building with certain prison gang members. Plaintiff's claims in Group Two generally arise in connection with prison officials allegedly sexually harassing and religiously discriminating against Plaintiff as well as interfering with the practice of his Messianic Jewish faith. Plaintiff's claims in Group Three generally arise from his current complaints about his conditions of confinement.

In the Order, the undersigned directed Plaintiff to file separate complaints with regard to his claims in Groups Two and Three. Accordingly, the undersigned respectfully recommends that the following defendants named in connection with his claims in Groups Two and Three be dismissed without prejudice: (1) Director Davis; (2) TDCJ Chaplaincy Director     Rutledge; (3) Head Chaplain Wright; (4) Capt. Sturgis; (5) Capt. Garcia; (6) Lt. Garza; (7) Sgt. Garcia; and (12) Sgt. Nino.

The undersigned further allowed Plaintiff to bring his related claims in Group One in this action. With regard to these claims, Plaintiff has presented the following allegations either at the *Spears* hearing or in Plaintiff's Original Complaint (D.E. 1): Plaintiff, who is a former military police member, is 50 years old, stands 6'00" tall, and weighs 225 pounds.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Plaintiff has medical issues with respect to circulation, cholesterol, and allergies. Plaintiff also has lost cartilage in one of his knees and back problems. Plaintiff was informed in 2011 that he needed knee replacement surgery. With regard to his back problems, Plaintiff has an enlarged disc pressing against his nerves which causes Plaintiff to suffer a lot of pain. Plaintiff has bottom row and bottom bunk restriction as well as walking restrictions limiting him to a certain distance before having to stop.

Plaintiff was transferred to the Coffield Unit in August 2016. While housed at the Coffield Unit, Plaintiff became involved in issues with a prison gang known as "Tango Blast." Plaintiff alleges an officer at the Coffield Unit informed inmates there that Plaintiff "was a former lawman and a child molester." (D.E. 20, p. 9). Following the spread of this information, members of Tango Blast began harassing and assaulting Plaintiff.

On September 26, 2019, Plaintiff was transferred from the Coffield Unit to the McConnell Unit. Plaintiff advised McConnell Unit prison officials that he had problems with Tango Blast inmates at the Coffield Unit. Since arriving at the McConnell Unit, Plaintiff alleges has been threatened by members of Tango Blast for being a former law enforcement officer. Plaintiff reported the threats to a safety officer but was not sure if any official notations regarding the threat were made.

On September 27, 2019, Plaintiff was moved to the G-pod in the 7 Building where Tango Blast members were living and was immediately threatened by members of that group. Plaintiff described the threats as "a lot of word of mouth" in which members would say "you better watch your back." (D.E. 20, p. 16). One Tango Blast member had known

Plaintiff from the Coffield Unit and threatened Plaintiff that he would be beaten if he stayed in this wing.  (D.E. 20, p. 18).

Plaintiff left the pod and advised Sgt. Ochoa about the threats from the Tango Blast member he had just encountered.  Plaintiff further told Sgt. Ochoa about Plaintiff's history with Tango Blast from the Coffield Unit.  Plaintiff alleges Sgt. Ochoa told Plaintiff to return to the pod and accept his housing.  Plaintiff refused out of fear for his life.  Plaintiff claims that after taking his wristwatch and chill towel, Sgt. Ochoa handcuffed Plaintiff behind his back and again directed him to return to the pod and accept his housing or else Plaintiff's property would be thrown into the pod.

Sgt. Ochoa escorted Plaintiff outside and placed him in the custody of another officer.   According to Plaintiff, Sgt. Ochoa went back inside the building, grabbed Plaintiff's property, carried it to the G-pod, slammed the property on the dayroom floor, and left it there for other offenders to take.  Sgt. Ochoa advised Plaintiff that his property was in the G-pod and inmates were rummaging through it.  Plaintiff refused to go out of fear for his life.

Several officers including Lt. Muro arrived on the scene.  Plaintiff alleges Lt. Muro commanded Plaintiff to accept the housing assignment.  Plaintiff refused and explained that his life was in danger.  Plaintiff further explained to Lt. Muro about what Sgt. Ochoa did with his property.  Either Sgt. Ochoa or Lt. Muro called for an Inmate Control Situation (ICS),   Lt. Muro advised Plaintiff that he could go retrieve his property and figure out who stole the property.  Plaintiff alleges Lt. Muro told Plaintiff that he was going to be sprayed, placed in a gurney, and wheeled into the cell.

Plaintiff refused Lt. Muro's orders because he believed his life was in danger. Plaintiff alleges Lt. Muro and Sgt. Ochoa ordered other officers to force Plaintiff to the ground.  Plaintiff advised Lt. Muro that he had a bad back and knees as well as medical restrictions.  The officers, under the orders from Lt. Muro and Sgt. Ochoa, forced Plaintiff to the ground on his belly, placed a knee in his back, and held Plaintiff's legs.  Ankle cuffs were placed on Plaintiff.  Lt. Muro informed Plaintiff that he would be carried to the G-pod unless he voluntarily submitted to do so on his own. Plaintiff refused, telling Lt. Muro that his life was in danger from offenders in that pod.  Plaintiff further stated while he was on the ground that he wanted an Offender Protection Investigation (OPI).

Lt. Muro and another officer walked Plaintiff to the infirmary for a wellness check. Plaintiff's blood pressure and heart rate were elevated.  Plaintiff testified at the *Spears* hearing that he suffered "lasting pain" as a result of the use of force, which made it excruciating for him to move around.  (D.E. 20, p. 24).

Lt. Muro took Plaintiff to the Mental Health Department and had him fill out an OPI form. Plaintiff's cuffs were removed, and he was taken to the 12 Building while the OPI was investigated.  The OPI investigation did not result in any relief for Plaintiff.

While Plaintiff was awaiting the results of the OPI investigation, he was housed in the 12 Building, protective custody, for two to three weeks. Sometime during the evening of September 27, 2019, Plaintiff was placed in a single cell with no ventilation or air conditioning.   He complained to officers about the heat being unbearable in his cell and about the return of his property.  Plaintiff alleges he did not have access to drinking water. Plaintiff remained in the cell where the heat was oppressive for nine hours.  (D.E. 20, p. 29).

Plaintiff did not indicate he suffered any short term or long lasting health problems from confinement in a cell with excessive heat for nine hours.

Around 3:00 a.m. on September 28, 2019, Plaintiff received his property back.  His typewriter was damaged almost to the point of destruction and several other property items were missing.  Plaintiff filed two grievances, one for illegal use of force and the other for damage and theft to his property.  Plaintiff's Step 1 grievance went unprocessed.  Plaintiff submitted a Step 2 grievance against UGI Garcia due to the fact his Step 1 grievances were not processed.  The Step 2 grievances were returned with the notation "No resubmission was received."  Plaintiff's grievances were returned on January 30, 2020.

On September 28, 2019, Plaintiff sent an inmate request form to Warden Richardson about the illegal use of force and theft and destruction of his property. Warden Richardson did not respond.  On November 20, 2019, Plaintiff sent an I-60 to Warden Richardson about TDCJ policy Plaintiff believed was unconstitutional.  Warden Richardson did not respond. Plaintiff filed a Step 1 grievance on November 25, 2019.  The grievance was returned unprocessed as untimely.  Plaintiff alleges the grievance was filed timely under TDCJ policy.

According to Plaintiff, prison officials attempted to resolve the matter involving the missing property by giving Plaintiff contraband items confiscated from other inmates. Plaintiff believes this resolution came at Warden Richardson's direction to Major Delapp. However, because these items were contraband, they were later confiscated from Plaintiff. Plaintiff sues Major Delapp due to his inability to resolve his property issues.  Plaintiff received a typewriter which was not a satisfactory replacement.  Plaintiff acknowledged that

he did not file a case in state court relating to his missing, stolen, or destroyed property. (D.E. 20, p. 34).

Plaintiff's current custodial classification is G4, which is one level below the most restrictive classification. He has been assaulted on one occasion by a former member of Tango Blast in August 2020. The incident happened when Plaintiff was leaving the shower. The former Tango Blast member accused Plaintiff of being a snitch and punched Plaintiff in the face. No action was taken with respect to the incident, and Plaintiff did not file a grievance on it. Plaintiff testified at the *Spears* hearing that he did not include allegations regarding this single assault as part of the complaint. (D.E. 20, p. 11).

Over the course of several months, Plaintiff has sent several formal resolution letters and grievances against the named defendants in this case. There were no responses to these letters and grievances. Plaintiff alleges UGI Johnson and UGI Garcia have subverted the grievance process.

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v.*

*Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail

on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law

deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C.

§ 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if

he misuses or abuses official power and if there is a nexus between the victim, the improper

conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d

859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### A.    Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against

that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment, however, bars claims for money damages against a state or state

agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas*

*Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for

monetary damages against a state official in his or her official capacity is one against the

state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity

specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v.*

*Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for

money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for money

damages, those claims are barred by the Eleventh Amendment.  Thus, it is respectfully

recommended that Plaintiff's claims for money damages against the individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### B.    Excessive Force

#### *(1)   Defendants Ochoa and Muro*

Plaintiff claims that Defendants Ochoa and Muro used excessive force against him. Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992). The factors to be considered are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

A prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40. The Supreme Court explained that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

Plaintiff alleges in relevant part that: (1) he refused the orders of Sgt. Ochoa and Lt. Muro to accept his cell assignment because he felt his life was in danger; (2) Lt. Muro and Sgt. Ochoa ordered other officers to force Plaintiff to the ground despite knowing that Plaintiff had a bad back and knees as well as medical restrictions; (3) under the orders of Lt. Muro and Sgt. Ochoa, officers forced Plaintiff to the ground on his belly, placed a knee in his back, and held Plaintiff's legs; (4) ankle cuffs were placed on Plaintiff; (5) after the use of force, Plaintiff was taken to the infirmary; and (6) Plaintiff has suffered "lasting pain" as a result of the use of force.  Taken as true, Plaintiff's allegations suggest that Sgt. Ochoa and Lt. Muro ordered the use of force against Plaintiff maliciously and sadistically and that Plaintiff suffered more than a *de minimis* injury as a result of the use of force.  Thus, it is respectfully recommended that Plaintiff's excessive force claim against these defendants in their individual capacities be retained.

### (2)   Former Warden Richardson

Plaintiff seeks to hold former Warden Richardson responsible for the excessive use of force by Defendants Ochoa and Muro.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304.). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleges that he made Warden Richardson aware of the excessive use of force by Defendants Ochoa and Muro but that Warden Richardson failed to respond. Other than alleging that Warden Richardson had knowledge of the incident, Plaintiff alleges nothing to suggest that Warden Richardson had any personal involvement with regard to the use-of-force taken. Plaintiff further alleges nothing to indicate that Warden Richardson implemented a policy that resulted in Plaintiff's injuries. Accordingly, it is respectfully recommended that Plaintiff's excessive force claim against Warden Richardson in his supervisory capacity be dismissed with prejudice as frivolous and/or for failure to state a claim.

### (3) Injunctive relief

Plaintiff seeks injunctive relief in this case. While not specifically indicating what injunctive relief he seeks as to his excessive force claim, he generally seeks the implementation of revised policies to address officers who engage in the mistreatment of

offenders.   (D.E. 1-6).   Warden Evelyn Castro would appear to be the best defendant capable of providing any injunctive relief should he prevail on his excessive force claim. Accordingly, the undersigned respectfully recommends that Plaintiff's excessive force claim be retained against Warden Castro in her official capacity for injunctive relief only.

### C.      Due Process (Personal Property)

Liberally construed, Plaintiff claims that his due process rights were violated when Sgt. Ochoa and Lt. Muro deprived Plaintiff of his personal property when they asked him to accept his housing assignment.   Plaintiff's allegations reflect that some of his personal property was returned to him in a damaged condition while other items remained missing. Lastly, Plaintiff alleges that Major Delapp, at Warden Richardson's instructions, attempted to replace some of Plaintiff's property with contraband taken from other prisoners.

A state actor's negligent or intentional deprivation of a prisoner's property, resulting from random and unauthorized action of that state actor, does not constitute a due process violation if there exists an adequate state post-deprivation remedy.   *Zinermon v. Burch*, 494 U.S. 113, 115 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981).   Texas has post-deprivation remedies available in state court for the confiscation of prisoner property.   *See* Tex. Gov't Code Ann. Art. 501.007; *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1984).

Plaintiff acknowledged at the *Spears* hearing that he did not file a case in state court relating to his missing, stolen, or destroyed property.   (D.E. 20, p. 34).   Because Plaintiff has not pursued his state court remedies, he cannot allege that the post-deprivation remedies

available to him are inadequate.  As such, Plaintiff's allegations regarding the confiscation and/or destruction of his personal property without authorization fail to state a cognizable constitutional claim.  It is respectfully recommended, therefore, that his due process claims against Defendants Ochoa, Muro, Richardson, and Delapp be dismissed as frivolous and/or for failure to state a claim for relief.

### D.    Deliberate Indifference

Plaintiff claims that, during the course of the OPI investigation into his life endangerment complaint, he was placed in a cell for nine hours where the heat was excessive.  The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

Extreme cell temperatures in a prison can violate the Eighth Amendment.  *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir.

2004). "To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball*, 792 F.3d at 592 (internal quotation marks omitted) (affirming holding that Eighth Amendment was violated when prisoners who were being treated for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures); *see Webb v. Livingston*, 618 F. App'x 201, 208-09 (5th Cir. 2015) (affirming holding that inmates with heat-sensitive medical conditions who were housed in cells where the temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

To demonstrate that prison conditions impose an unreasonable risk of serious damage to a prisoner's health, an inmate need not show that a death or serious injury already has occurred but rather that there is a "substantial risk of serious harm." *Ball*, 792 F.3d at 593 (citing *Gates*, 376 F.3d at 333). "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect." *Id.* 792 F.3d at 592 (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

Plaintiff alleges that: (1) he was placed in a protective custody single cell sometime during the evening of September 27, 2019; (2) the heat in the cell was unbearable as it had no ventilation or air conditioning; (3) Plaintiff also did not have access to drinking water; and (4) Plaintiff remained in the cell for nine hours. It is unclear from Plaintiff's complaint

and *Spears* hearing testimony who Plaintiff seeks to hold responsible for his short-term placement in the hot cell.

Nevertheless, accepted as true, Plaintiff's allegations fail to indicate that his relatively short stay in the hot cell posed an unreasonable risk of serious damage to his health. Plaintiff acknowledges that did not suffer any short term or long-lasting health problems from confinement in a cell with excessive heat and no access to drinking water for nine hours. *See Encalade v. Livingston*, No. 1:10-CV-196, 2010 WL 8471870, *4 (N.D. Tex. Nov. 15, 2010) (concluding that inmate's confinement in a hot cell for 72 hours "failed to demonstrate an extreme deprivation or that officials were deliberately indifferent to his health, safety, or serious medical needs"). Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claim be dismissed with prejudice for failure to state a claim and/or as frivolous.

### E.      Failure to Protect

Liberally construed, Plaintiff complains that several defendants acted with deliberate indifference to his health and safety by failing to protect him. Prison officials have a constitutional duty under the Eighth Amendment to protect prisoners from violence by other prisoners. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832-33). "Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003)

In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove that the official knew of and disregarded an excessive risk to the inmate's safety; was aware of facts from which the inference could be drawn that a

substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Farmer*, 511 U.S. at 842–45. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment." *Id.* at 846.

Plaintiff alleges that: (1) on September 26, 2019, upon arrival at the McConnell Unit from the Coffield Unit, Plaintiff advised McConnell Unit prison officials that he had problems with Tango Blast inmates at the Coffield Unit; (2) since arriving at the McConnell Unit, Plaintiff was threatened by members of Tango Blast for being a former lawman; (3) Plaintiff reported the threats to a safety officer but was not sure if any official notations regarding the threat were made; (4) on September 27, 2019, Plaintiff was moved to the G-pod in the 7 Building where Tango Blast members were living and was immediately threatened by members of that group; (5) Plaintiff described the threats as "a lot of word of mouth" in which members would say "you better watch your back"; and (5) one Tango Blast member had known Plaintiff from the Coffield Unit and threatened Plaintiff that he would be beaten if he stayed in this wing; (6) Plaintiff informed Sgt. Ochoa and Lt. Muro about the threats but was ordered back to his cell; (7) after the use-of-force incident discussed above, Plaintiff filed an OPI and was moved to protective custody for two to three weeks while the OPI investigation was pending; (8) Plaintiff did not receive any relief in connection with the OPI investigation; and (9) during his stay at the McConnell Unit, Plaintiff was assaulted on one occasion in August 2020 when a former Tango Blast member accused Plaintiff of being a snitch and took a cheap shot at Plaintiff's face.

Taken Plaintiff's allegations as true, he has failed to state a failure-to-protect claim. Plaintiff's allegations indicate that he was subjected to general threats by Tango Blast members rather than threats specifying that an attack was imminent. Plaintiff was only attacked on one occasion in August 2020 by a former Tango Blast member. This attack occurred nearly eleven months after he reported being threatened by Tango Blast members to prison officials.

More importantly, while Defendants Ochoa and Muro initially ordered Plaintiff back to his cell when Plaintiff initially reported the threats, he was not in fact returned to his cell. Rather, Plaintiff's allegations reflect that he was allowed to file an OPI and was brought into protective custody for two to three weeks while the OPI was pending. Thus, by taking steps to protect Plaintiff, prison officials did not ignore Plaintiff and summarily dismiss his complaints about being threatened. In sum, Plaintiff's allegations fail to suggest that he was incarcerated under conditions that posed a substantial risk of serious harm existed or that any McConnell Unit official acted with deliberate indifference to his need for protection.

Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claims for failure to protect be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

**F.    Grievances**

Plaintiff alleges that he has filed numerous grievances with respect to the claims discussed above, that several grievances went unprocessed, that numerous informal complaints have received no response, and that UGI Johnson and UGI Garcia have subverted the grievance process.

Plaintiff's allegations, at best, point to his dissatisfaction with the actions taken by UGI Johnson, UGI Garcia, and other prison officials in processing and/or not responding in a proper fashion to Plaintiff's formal and informal grievances.  Such allegations, however, fail to state a cognizable constitutional claim.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir.  2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned recommends that Plaintiff's claims against UGI Johnson and UGI Garcia regarding the grievance process be dismissed for failure to state a claim and/or as frivolous.

## V.   RECOMMENDATION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state (1) (1) excessive force claims against **Sergeant Nestor S. Ochoa and Lieutenant Javier Muro** in their individual capacities; and (2) excessive claim against **Warden Evelyn Castro** in her official capacity for injunctive relief only.  Accordingly, it is respectfully recommended that these claims be **RETAINED**.  The undersigned will order service as to these defendants by separate order.

The undersigned further recommends that: (1) **TDCJ Director Lorie Davis, TDCJ Director of Chaplaincy Michael Rutledge, Head Chaplain Joseph Wright, Captain Skinner C. Sturgis, Captain Christi L. Garcia, Lieutenant Dorian B. Garza, Sergeant Rodolfo A. Garcia, and Sergeant Andrew H. Nino** be **DISMISSED without prejudice** from this action; (2) Plaintiff's claims for money damages against all individuals Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; and (3) Plaintiff's claims against the remaining defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

ORDERED this 3rd day of November 2020.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).