United States District Court
Southern District of Texas

**ENTERED**

November 04, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD SCOTT SHAFER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-167 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER REGARDING MISJOINDER OF UNRELATED CLAIMS

Plaintiff Richard Scott Shafer, a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  In this Order, the undersigned will address Plaintiff's attempt to join in an impermissible manner unrelated claims as part of one action.

## I.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). Plaintiff's claims and allegations in this action arise in connection with his current assignment to the McConnell Unit in Beeville, Texas.

In this case, Plaintiff sues the following McConnell Unit and TDCJ officials: (1) TDCJ Director Lorie Davis; (2) Former Head Warden Jeffrey Richardson; (3) Senior Warden Evelyn Castro; (4) TDCJ Director of Chaplaincy Michael Rutledge; (5) Head Warden Joseph Wright; (6) Major John R. DeLapp, Jr.; (7) Captain Skinner C. Sturgis; (8) Captain Christi L. Garcia; (9) Lieutenant Dorian B. Garza; (10) Lieutenant Javier Muro; (11) Sergeant Rodolfo A. Garcia; (12) Sergeant Andrew H. Nino; (13) Sergeant Nester S.

Ochoa, Sergeant; (14) Unit Grievance Investigator (UGI) Jessica Garcia; and (15) UGI A. Johnson.   Plaintiff sues each defendant in his or her individual and official capacity. Plaintiff seeks declaratory, injunctive, and monetary relief.

A *Spears*[1] hearing was conducted on August 20, 2020.  Plaintiff has presented the following allegations and claims either at the *Spears* hearing or in Plaintiff's Original Complaint (D.E. 1):  Plaintiff, who is a former military police member, is 50 years old, stands 6'00" tall, and weighs 225 pounds.  Plaintiff is a Messianic Jew, and his faith is listed on his identification documents.

Plaintiff has medical issues with respect to circulation, cholesterol, and allergies. Plaintiff also has lost cartilage in one of his knees and back problems.  Plaintiff was informed in 2011 that he needed knee replacement surgery.  With regard to his back problems, Plaintiff has an enlarged disc pressing against his nerves which causes Plaintiff to suffer a lot of pain.  Plaintiff has bottom row and bottom bunk restriction as well as walking restrictions limiting him to a certain distance before having to stop.

Plaintiff was transferred to the Coffield Unit in August 2016.  While housed at the Coffield Unit, Plaintiff became involved in issues with a prison gang known as "Tango Blast."  Plaintiff alleges an officer at the Coffield Unit informed inmates there that Plaintiff "was a former lawman and a child molester."  (D.E. 20, p. 9).  Following the spread of this information, members of Tango Blast began harassing and assaulting Plaintiff.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

On September 26, 2019, Plaintiff was transferred from the Coffield Unit to the McConnell Unit. Plaintiff advised McConnell Unit prison officials that he had problems with Tango Blast inmates at the Coffield Unit. Since arriving at the McConnell Unit, Plaintiff alleges he has been threatened by members of Tango Blast for being a former law enforcement officer. Plaintiff reported the threats to a safety officer but was not sure if any official notations regarding the threat were made.

On September 27, 2019, Plaintiff was moved to the G-pod in the 7 Building where Tango Blast members were living and was immediately threatened by members of that group. Plaintiff described the threats as "a lot of word of mouth" in which members would say "you better watch your back." (D.E. 20, p. 16). One Tango Blast member had known Plaintiff from the Coffield Unit and threatened Plaintiff that he would be beaten if he stayed in this wing. (D.E. 20, p. 18).

Plaintiff left the pod and advised Sgt. Ochoa about the threats from the Tango Blast member he had just encountered. Plaintiff claims he told Sgt. Ochoa about Plaintiff's history with Tango Blast members from the Coffield Unit. Plaintiff alleges Sgt. Ochoa told Plaintiff to return to the pod and accept his housing. Plaintiff refused out of fear for his life. Plaintiff further alleges that after taking Plaintiff's wristwatch and chill towel, Sgt. Ochoa handcuffed Plaintiff behind his back and again directed him to return to the pod and accept his housing or else Plaintiff's property would be thrown into the pod.

Sgt. Ochoa escorted Plaintiff outside and placed him in the custody of another officer. Sgt. Ochoa went back inside the building, grabbed Plaintiff's property, carried it to the G-pod, slammed the property on the dayroom floor, and left it there for other offenders

to take.  Sgt. Ochoa advised Plaintiff that his property was in the G-pod and inmates were rummaging through it.  Plaintiff refused to go out of fear for his life.

Several officers including Lt. Muro arrived on the scene.  Plaintiff alleges Lt. Muro commanded Plaintiff to accept the housing assignment.  Plaintiff refused and explained that his life was in danger.  Plaintiff further explained to Lt. Muro about what Sgt. Ochoa did with his property.  Either Sgt. Ochoa or Lt. Muro called for an Inmate Control Situation (ICS),   Lt. Muro advised Plaintiff that he could go retrieve his property and figure out who stole the property.  Plaintiff alleges Lt. Muro told Plaintiff that he was going to be sprayed, placed in a gurney, and wheeled into the cell.

Plaintiff refused Lt. Muro's orders because he believed his life was in danger.  Lt. Muro and Sgt. Ochoa ordered other officers to force Plaintiff to the ground.  Plaintiff advised Lt. Muro that he had a bad back and knees as well as medical restrictions.  The officers, under the orders from Lt. Muro and Sgt. Ochoa, forced Plaintiff to the ground on his belly, placed a knee in his back, and held Plaintiff's legs.  Ankle cuffs were placed on Plaintiff.  Lt. Muro informed Plaintiff that he would be carried to the G-pod unless he voluntarily submitted to do so on his own. Plaintiff refused, telling Lt. Muro that his life was in danger from offenders in that pod.  Plaintiff further stated while he was on the ground that he wanted an Offender Protection Investigation (OPI).

Lt. Muro and another officer walked Plaintiff to the infirmary for a wellness check.  Plaintiff's blood pressure and heart rate were elevated.  Plaintiff testified at the *Spears* hearing that he suffered "lasting pain" as a result of the use of force, which made it excruciating for him to move around.  (D.E. 20, p. 24).

Lt. Muro took Plaintiff to the Mental Health Department and had him fill out an OPI form. Plaintiff's cuffs were removed, and he was taken to the 12 Building while the OPI was investigated.  The OPI investigation did not result in any relief for Plaintiff.

While Plaintiff was awaiting the results of the OPI investigation, he was housed in the 12 Building, protective custody, for two to three weeks. Sometime during the evening of September 27, 2019, Plaintiff was placed in a single cell with no ventilation or air conditioning.  He complained to officers about the heat being unbearable in his cell and about the return of his property.  Plaintiff alleges he did not have access to drinking water. Plaintiff remained in the cell where the heat was oppressive for nine hours.  (D.E. 20, p. 29). Plaintiff did not allege that he suffered any short term or long-lasting health problems from confinement in a cell with excessive heat for nine hours.

Around 3:00 a.m. on September 28, 2019, Plaintiff received his property back.  His typewriter was damaged almost to the point of destruction and several other property items were missing.  Plaintiff filed two grievances, one for illegal use of force and the other for damage and theft to his property.  Plaintiff's Step 1 grievance went unprocessed.  Plaintiff submitted a Step 2 grievance against UGI Garcia due to the fact his Step 1 grievances were not processed.  The Step 2 grievances were returned with the notation "No resubmission was received."  Plaintiff's grievances were returned on January 30, 2020.

On September 28, 2019, Plaintiff sent an inmate request form to Warden Richardson about the illegal use of force and theft and destruction of his property. Warden Richardson did not respond.  On November 20, 2019, Plaintiff sent an I-60 to Warden Richardson about a policy Plaintiff believed to be unconstitutional.   Warden Richardson did not respond.

Plaintiff filed a Step 1 grievance on November 25, 2019. The grievance was returned unprocessed as untimely. Plaintiff states that the grievance was filed timely under TDCJ policy.

According to Plaintiff, prison officials attempted to resolve the matter involving the missing property by giving Plaintiff contraband items confiscated from other inmates. Plaintiff believes this resolution came at Warden Richardson's direction to Major DeLapp. However, because these items were contraband, they were later confiscated from Plaintiff. Plaintiff sues Major DeLapp due to his inability to resolve his property issues. Plaintiff received a typewriter which was not a satisfactory replacement. Plaintiff acknowledged that he did not file a case in state court relating to his missing, stolen, or destroyed property. (D.E. 20, p. 34).

Plaintiff's current custodial classification is G4, which is one level below the most restrictive classification. He has been assaulted on one occasion by a former member of Tango Blast in August 2020. The incident happened when Plaintiff was leaving the shower. The former Tango Blast member accused Plaintiff of being an informant and punched Plaintiff in the face. No action was taken with respect to the incident, and Plaintiff did not file a grievance on it. Plaintiff testified at the *Spears* hearing that he did not include allegations regarding this single assault as part of the complaint. (D.E. 20, p. 11).

On October 1, 2019, while still confined in the 12 Building, Lt. Garza advised Plaintiff to move to the 7 Building. Plaintiff told her that his life had been threatened by inmates in the 7 Building who were members of Tango Blast. Lt. Garza reportedly threatened Plaintiff with a major disciplinary case if he did not move. Plaintiff continued to

refuse the move.  Lt. Garza allegedly stated to him "You're just a Jew and a pussy, and all Jews are pussies.  Like a pussy, you're going to get fucked."  (D.E. 20, p. 35).  Plaintiff filed a Step 1 grievance against Lt. Garza, claiming sexual and religious harassment.  Plaintiff further alleges that on other occasions, Lt. Garza instructed Plaintiff not to wear his Kippah, which is a head covering in Plaintiff's faith.  Lt. Garza, however, has not brought any disciplinary cases against Plaintiff for wearing his Kippah.

While Plaintiff was attending services on October 25, 2019, Plaintiff was called to speak to Capt. Sturgis about his grievance against Lt. Garza for sexual harassment and religious discrimination.  Capt. Sturgis said he would investigate his claims of sexual and religious harassment, and look into his prior grievances filed against Sgt. Ochoa and Lt. Muro.  However, Capt. Sturgis failed to investigate like he had promised.  Plaintiff filed a Step 1 grievance against Capt. Sturgis. It was denied and returned to Plaintiff on December 9, 2019.  In the denial, it was noted that the offender grievance tracker system had not shown a grievance filed on or about September 27, 2019.

On November 1, 2019, Sgt. Garcia and Lt. Garza brought a disciplinary case against Plaintiff for allegedly lying to Capt. Sturgis about his claims against Lt. Garza for sexual harassment and religious discrimination.  In addition, Lt. Garza also brought a disciplinary case against Plaintiff for being out of place.  Lt. Garza presided over the case at Plaintiff's cell door and found Plaintiff guilty.  Plaintiff claims this was a conflict of interest.  As punishment, Plaintiff received 45 days loss of commissary and recreation as well as 45 days of cell restrictions.  (D.E. 20, p. 38).

On January 30, 2020, Plaintiff walked out of the chow hall and was stopped by Capt. Garcia.   Plaintiff alleges Capt. Garcia told him to remove his Kippah.   Capt. Garcia is alleged to have instructed Plaintiff that he was not allowed to wear it unless it was purchased from the Commissary.   Plaintiff disputes that such policy exists.   He also alleges that skull caps sold in the Commissary do not conform to his particular Jewish faith. Plaintiff purchased his Kippah from an outside vendor.   Plaintiff testified at the *Spears* hearing that his wearing of the Kippah complied with TDCJ policy and regulations.   (D.E. 20, p. 40).

Capt. Garcia is alleged to have threatened Plaintiff with use of force if he did not remove the skull cap.   Plaintiff, under duress, complied and removed the cap.   He told Capt. Garcia he would file a grievance against her for religious discrimination and threatening him with force.   Plaintiff filed a Step 1 grievance against Capt. Garcia on January 31, 2020.   The grievance was never processed and was never returned to Plaintiff.   Plaintiff further testified that he was currently wearing the Kippah.   Capt. Garcia and Lt. Garza are the only two officers to complain about Plaintiff's wearing of the Kippah.

Plaintiff further claims that his ability to practice his faith has been violated with regard to: (1) denial of access to church and having Holy Day services; and (2) the denial of kosher foods.   (D.E. 20, p. 44).   Chaplaincy Director Rutledge and Head Chaplain Wright have failed to respond to Plaintiff's request for accommodation to celebrate the Holy Days and to Plaintiff's request for kosher meals.

Over the course of several months, Plaintiff has sent several formal resolution letters and grievances against the named defendants in this case.   Plaintiff did not receive any

responses to these letters and grievances.  Plaintiff alleges UGI Johnson and UGI Garcia have subverted the grievance process.  The Director of Chaplaincy and his chaplains also have not responded to Plaintiff.

On July 15, 2020, Plaintiff filed a Declaration, complaining about his pod being placed on a full lockdown which began on July 9, 2020.  (D.E. 11, p. 1).  Plaintiff believes the lockdown occurred in retaliation for Plaintiff filing this action.  He complains that no Covid-19 tests have conducted for inmates in his pod.  Plaintiff further complains about the heat in his pod where he currently resides and the fact he has been refused heat mitigation measures such as respite showers.  Plaintiff testified at the *Spears* hearing that the temperature in his cell could be anywhere from 10 to 20 degrees hotter than in the day room.  (D.E. 20, p. 31).

In another Declaration filed on August 13, 2020, Plaintiff continues to complain about his housing pod being placed on lockdown since July 9, 2020.  (D.E. 14). During this time, Plaintiff's access to the law library has been almost non-existent.  Plaintiff also complains about being given only sack meals and the fact he is suffering from excessive heat in his cell and the lack of heat-mitigation measures.  Plaintiff further testified at the *Spears* hearing that the McConnell Unit has a current infestation of ants, roaches, snakes, mice, and brown recluse spiders.  (D.E. 20, p. 51-53).  Plaintiff alleges he has been bitten by insects or spiders on several occasions.

## II.    DISCUSSION

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to join either as "independent or as alternative claims, as many claims as it has against an opposing party."

Federal Rule of Civil Procedure 20(a), in turn, only allows the joinder of several parties if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants.  In other words, "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's complaint impermissibly attempts to raise claims against multiple defendants stemming from more than one transaction or occurrence.  Plaintiff's claims, which are varied and extensive, are grouped as follows to reflect the multiple transactions or occurrences alleged in this case:

> Group One - Plaintiff raises claims of excessive force, deprivation of property, deliberate indifference, and failure to protect arising from his related allegations that: (1) certain prison officials used force against him after Plaintiff refused to be placed in the same housing building along with Tango Blast members; (2) certain prison officials confiscated, destroyed, or lost personal property when attempting to force Plaintiff to accept his housing assignment; and (3) while investigating Plaintiff's OPI regarding his claims of being threatened by other inmates, he was placed in cell for nine hours where there was excessive heat.

> Group Two- Plaintiff was subjected to sexual and religious harassment on October 1, 2019, when Lt. Garza called Plaintiff a "Jew and a pussy." Plaintiff's grievances regarding sexual and religious harassment were denied. Lt. Garza continued to infringe upon Plaintiff's religious rights when she ordered Plaintiff not to wear his Kippah.  In a related incident on January 30, 2020, Capt. Garcia instructed Plaintiff to remove his Kippah because he could not wear one that was not purchased from the Commissary.  Lastly, as part of his claims relating to the infringement on his right to practice his religion, Plaintiff claims that prison officials have denied him denial of access to church along with Holy Day services and kosher foods.

> Group Three – Plaintiff claims about his current conditions of confinement. Specifically, he claims that: (1) his current placement in lockdown was in retaliation for him filing this action; (2) his living pod has excessive heat

conditions, and he is being denied respite showers; and (3) the McConnell Unit has a current infestation of ants, roaches, snakes, mice, and brown recluse spiders; and (4) he is being denied sack meals.

By alleging unrelated occurrences or transactions against different prison officials, Plaintiff's complaint does not comport with Rule 18 and Rule 20 of the Federal Rules of Civil Procedure.   *See* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1583 (2d ed. 1990) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed); *see also Hubbard v. Haley*, 262 F.3d 1194, 1197 (11th Cir. 2001) (refusing to allow the joinder of multiple plaintiffs attempting to circumvent the PLRA's unambiguous requirement that each prisoner be required to pay the full amount of the filing fee); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Despite Plaintiff's failure to comply with Rules 18 and 20, the undersigned will allow Plaintiff to proceed in this action with his claims and allegations set forth in Group One. The undersigned finds that the allegations alleged as part of Group One are sufficiently related to allow Plaintiff to join in this action.   In a separate Memorandum and Recommendation, the undersigned will issue its recommendations as to which claims in Group One should be retained and which claims should be dismissed.

Because Plaintiff's allegations in Groups Two and Three arise of separate transactions and occurrences (and are unrelated) from each other and from Plaintiff's allegations in Group One, the undersigned will not consider same as part of this action.  ***If***

11 / 12

***Plaintiff seeks to pursue the claims in Groups Two and Three, he must file separate civil***

***actions and pay additional filing fees.***

Plaintiff is **DIRECTED** to file: (1) a separate action raising claims arising from his allegations in Group Two; and (2) a separate action raising claims arising from his allegations in Group Three.  The Clerk of Court is **DIRECTED** to send Plaintiff two form complaints which are used to initiate actions pursuant to § 1983 as well as two form applications to proceed *in forma pauperis*.  Plaintiff is **WARNED** that any complaint submitted which impermissibly joins unrelated claims arising from difference transactions or occurrences will be subject to dismissal.

ORDERED this 3rd day of November 2020.

Jason B. Libby
United States Magistrate Judge